■ The People of the State of New York, Respondent, v David Hernandez, Appellant. The People of the State of New York, Respondent, v Oswaldo Santana, Appellant.— Judgments, Supreme Court, New York County (Edwin Torres, J.), rendered April 25, 1991, convicting defendants, after a joint trial before separate juries, of murder in the second degree, attempted murder in the second degree, attempted robbery in the first degree, attempted robbery in the second degree, criminal use of a firearm in the first degree and criminal possession of a weapon in the second and third degrees, and additionally convicting defendant Hernandez of attempted aggravated assault upon a police officer, and sentencing both defendants to concurrent terms of 25 years to life for second degree murder, 5 to 15 years for attempted first degree robbery and second degree weapons possession, 2-⅓ to 7 years for attempted second degree robbery and third degree weapon possession, to be served consecutively to concurrent terms of 8-⅓ to 25 years for attempted second degree murder and 12-½ to 25 years for criminal use of a firearm, which were likewise to be served consecutively to a term of 2-⅓ to 7 years for another count of attempted second degree robbery, and additionally sentencing defendant Hernandez to a term of 5 to 15 years for attempted aggravated assault upon a police officer, to run concurrently with the sentence for attempted murder and criminal use of a firearm, unanimously affirmed.

Defendants contrived an ambush in a darkened but boarded stairwell of an apartment building in order to rob a man they believed was going to buy two kilograms of cocaine from defendant Santana. In fact, the intended victim was an undercover officer armed and wearing a radio transmitter. When Santana lured the officer into the unlit stairway, Hernandez suddenly emerged from the shadows with gun in hand aimed at the officer's head. The officer was able to seize the weapon and a struggle ensued between the three men during which the officer was severely bitten on the forehead. At that point, the officer identified himself, fell to the floor, drew his service revolver and began shooting, a bullet striking his own leg.

Numerous members of the backup unit, upon hearing the gunshots, rushed the building. The decedent, New York State Trooper, Joseph Aversa, was stationed the closest to the back door. Hernandez exited alone from this door, gun still in hand, aimed at another officer across the courtyard. A fusillade of gunfire ensued. In its aftermath, the grim result was realized: State Trooper Aversa had died instantly from a single shot to the head. Another officer and Hernandez were also shot. The bullet that killed Trooper Aversa was not recovered, and it could not be determined with certainty who fired the shot.

The trial court properly denied the defense motion seeking an order of dismissal of the felony murder count on the ground the People failed to prove Hernandez fired the fatal round. When a defendant's conduct "clearly [falls]" within the proscriptions of a homicide section, he is properly held liable under it unless he can show that the Legislature "specifically contemplated" otherwise *(People v Duffy,* 79 NY2d 611, 614; *see also, People v Keyes,* 75 NY2d 343, 348).

Defendants rely on *People v Wood* (8 NY2d 48, 53) for the theory that a felony murder conviction cannot stand when the "killing" was "committed" by a third party trying to thwart a crime (and in which the Court was interpreting the predecessor provision to Penal Law § 125.25 [3]). In adopting the present provision, the Legislature specifically deleted all of the language in the former provision that might have led to the conclusion that defendants should be relieved of liability for deaths they cause during a felony simply because they do not personally "commit" the final, lethal act. Thus, even if some "common law rule" had existed to support the conclusion that one of the felons must personally kill the victim, it is the plain words of the new statutory enactment, rather than the common law rule, that must now prevail *(cf., People v Gladman,* 41 NY2d 123, 128-129; *see also, People v Bornholdt,* 33

NY2d 75, 84, *cert denied sub nom. Victory v New York,* 416 US 905). Indeed, in construing the analogous criminal provision holding a defendant guilty of assault when he "causes" injury while trying to impede an officer, "the plain wording" of the section has been held to be controlling, even though, in some sense, it creates a "strict liability" crime *(People v Campbell,* 72 NY2d 602, 604).

"For criminal liability to attach, a defendant's actions must have been an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death'." *(Matter of Anthony M.,* 63 NY2d 270, 280, quoting *People v Stewart,* 40 NY2d 692, 697; *see also, People v Duffy,* 79 NY2d, *supra,* at 616). It must be shown that the defendant "sets in motion the machinery which ultimately results in the victim's death" *(People v Kibbe,* 35 NY2d 407, 412). This is exactly what the People proved at bar: the defendants unquestionably "forged" a critical link in the chain of events that led to Trooper Aversa's death.

For these purposes, direct cause does not mean either " 'immediate' " or " 'unaided' " *(People v Stewart,* 40 NY2d, *supra,* at 697). Nor need the defendant's acts "be the sole cause of death" *(Matter of Anthony M.,* 63 NY2d, *supra,* at 280). Rather, "[e]ven an intervening, independent agency will not exonerate defendant unless 'the death is solely attributable to the secondary agency, and not at all induced by the primary one' " *(supra,* at 280, quoting *People v Kane,* 213 NY 260, 270). The trial court repeatedly stressed to the jury that a showing of "but for" causation was only the first step in determining "cause" in the criminal context. Additionally, the jury was told that they must also find that defendant's conduct was *"a sufficiently direct cause* of the ensuing death before there can be any imposition of criminal liability" *(People v Kibbe,* 35 NY2d, *supra,* at 413 [emphasis in original]; *see also, People v Galle,* 77 NY2d 953; *People v Kern,* 75 NY2d 638, 658, *cert denied* 498 US 824; *People v Stewart,* 40 NY2d, *supra,* at 697). Finally, the actual chain of events at bar was obviously not an extraordinary coincidence, but was "reasonably related to the acts of the accused" *(People v Kibbe,* 35 NY2d, *supra,* at 412; *see also, People v Santiago,* 62 AD2d 572, 579-580, *affd* 48 NY2d 1023). It is implausible to claim, as defendants do, that they could not have foreseen that someone's bullet might go astray, having provoked a gun battle in and around the courtyard of a residential building.

Thus, the language of the current felony murder statute is precise when applied to the facts herein, and the trial court

properly charged the jury, over objection, that they could find defendants guilty of felony murder of the officer's death if death would not have happened "but for" the attempted robbery. Nor can it be said that the charge, viewed as a whole (see, *People v Kurtish,* 165 AD2d 670, *lv denied* 76 NY2d 1022), did not adequately convey the appropriate standard of proof to the jury, in that the jurors were repeatedly instructed that the People were required to prove defendants' guilt beyond a reasonable doubt. In any event, the defense failed to preserve any argument that the court, by its charge, diminished the People's burden of proof (*People v Jeffries,* 180 AD2d 554, *lv denied* 80 NY2d 833; *People v Molina,* 171 AD2d 578, *lv denied* 78 NY2d 970), or that they must acquit if their minds were " 'wavering' " (*People v Fox,* 72 AD2d 146, 147). Likewise, no objection was taken, for the most part, to the snippets of the prosecutor's summation now cited (*People v Dien,* 77 NY2d 885, 886), and, were we to consider defendants' claims in the interest of justice, we would find that the prosecutor's summation was a fair response to that of the defense (see, *People v Galloway,* 54 NY2d 396, 398-399).

Finally, the court properly determined that the criminal events fell into three distinct groups such that the sentences could run consecutively to each other. Consecutive terms may be imposed for separate "acts" even when the acts "may be said to have occurred in the course of a single extended transaction" (*People v Brathwaite,* 63 NY2d 839, 843; *see also, People v Truesdell,* 70 NY2d 809, 811). Further, consecutive sentences are permissible whenever a defendant, having committed acts " 'up to a particular point' " that constitute one crime, continues thereafter to commit the acts that constitute the other crime (*People v Day,* 73 NY2d 208, 212). Such are the facts at bar, and such is how the court carefully structured the sentence imposed.

When the undercover officer initially resisted the robbery attempt by grabbing the gun and announcing that he was an officer, at a moment at which the defendants could have abandoned their criminal plans, Hernandez chose to take the action further. After struggling for the gun at length and finally managing to wrest it from his victim, Hernandez evolved a new and even more violent criminal plan: he would murder the officer. And, having formed that murderous intent, he deliberately committed a separate criminal act. These acts, committed in the hallway, were separate and distinct from those committed in the courtyard to justify consecutive sen-

tences for the counts involving the death of Trooper Aversa and the wounding of a third officer.

Nor is an aggregate term of 39 years, 10 months to life, with the recommendation of no parole, excessive in light of the tragic result of defendants' actions (cf., *People v Castillo,* 178 AD2d 113, 116, *lv denied* 79 NY2d 998; *People v Riley-James,* 168 AD2d 740, 743, *lv denied* 77 NY2d 966; *People v Ferkins,* 116 AD2d 760, 764-765, *lv denied* 67 NY2d 942). Concur—Carro, J. P., Milonas, Ellerin and Asch, JJ.