■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OSCAR H. LINDERBERRY, Appellant. [626 NYS2d 876] —White, J. Appeal from a judgment of the Supreme Court (Monserrate, J.), rendered December 18, 1992 in Cortland County, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), rape in the first degree (two counts), kidnapping in the second degree, robbery in the first degree (two counts), burglary in the first degree (two counts), sodomy in the first degree and grand larceny in the third degree.

In this appeal defendant has mounted a multipronged challenge to his conviction following trial of the crimes of murder in the second degree (two counts), rape in the first degree (two counts), kidnapping in the second degree, robbery in the first degree (two counts), burglary in the first degree (two counts), sodomy in the first degree and grand larceny in the third degree.

A review of the trial record shows that defendant's conviction stems from a crime spree that commenced just after midnight on March 13, 1992 in the City of Cortland, Cortland County. At that time, defendant was lurking in the parking lot of Tops Market when he observed victim A leave the market and proceed to her car. Victim A noticed defendant approaching her and started to run back to the store; her flight ended, however, when defendant caught her, stabbed her in the stomach and dragged her back to her car, forcing

her into it. He then drove victim A to an isolated location where, brandishing a knife, he forced her to engage in sexual intercourse. Defendant then drove victim A, lying wounded and bleeding in the back seat, to the Cortland residence of his ex-wife, victim B, telling victim A he wanted to kill victim B.

Leaving victim A in the car, defendant broke down the door of victim B's residence and entered her apartment where he found her lying on the floor watching television. An eyewitness related that defendant stabbed victim B three times before fleeing and, before she died, victim B told a police officer that "Oscar had done it".

After leaving victim B's residence defendant returned to the car, telling victim A, "I hope I killed her." He then drove with victim A to an isolated area outside of Cortland where he forced her to engage in vaginal and anal intercourse, telling her "he wasn't going to have sex for a long time [because] he was going to prison for murder". Around sunrise of March 13, 1992, defendant let victim A out in the City of Ithaca, Tompkins County, and abandoned her car.

In Ithaca, defendant purchased a knife and abducted victim C, taking her car and forcing her to accompany him as he attempted to flee to Pennsylvania. During the flight, he told victim C that he had killed his ex-wife and had stabbed victim A when she resisted his demand for her car. Defendant's flight ended around 12:45 P.M. in the Village of Endicott, Broome County, when he was apprehended by the police. He was immediately transported to a State Police substation where he gave the police an incriminating written statement.

Defendant's first challenge is that the People, prior to a *Huntley* hearing, failed to provide him with *Rosario* material, specifically certain notes compiled by a Cortland police investigator. This challenge lacks substance because the People were not required to turn over the notes as the investigator was not a prosecution witness and, further, defendant made no request for them *(see, People v Love,* 187 AD2d 1030, *lv denied* 81 NY2d 888; *People v Duprey,* 174 AD2d 835, 836, *lv denied* 79 NY2d 856; *see also,* CPL 240.44).

Likewise, we find defendant's claim that his confession was the product of psychological coercion to be without substance. Prior to his interrogation, defendant was given his *Miranda* rights which he knowingly, intelligently and voluntarily waived as evidenced by his written waiver. He was also provided with coffee and cigarettes. The interrogation commenced around 2:25 P.M. and ended at 3:47 P.M., during which

time the two officers present testified that defendant did not display any evidence of intoxication nor did he appear to be tired or have any difficulty in understanding the questions posed to him. Considering the totality of these circumstances, we concur with County Court's determination* that defendant's confession was voluntary as it is evident that his will was not overborne nor his statement coerced (see, People v Richardson, 202 AD2d 958, lv denied 83 NY2d 914; People v Jackson, 178 AD2d 851, 852, lv denied 79 NY2d 1002).

Before testifying at the *Huntley* hearing, County Court advised defendant that he would be giving up his right to remain silent if he testified and, subject to certain limitations, any statement he made could be used against him later. Defendant now claims that this advice was erroneous and prejudicially affected him since he elected not to testify at trial.

Although defendant's *Huntley* hearing testimony could not have been admitted at trial as evidence-in-chief (see, People v Rodriguez, 69 NY2d 159, 164), County Court's advice was not erroneous because the prosecutor could have used such testimony for impeachment purposes (see, People v Mahone, 206 AD2d 263, 264, lv denied 84 NY2d 869). Hence, defendant's argument is meritless.

Defendant next challenges County Court's determination that a witness's photographic identification of him was not suggestive. At a *Wade* hearing, the witness testified that on the evening of March 12, 1992 he was with defendant for more than an hour which gave him a good opportunity to observe him. He further testified that when he subsequently went to the police station he was given written information regarding the photo array and then proceeded to view it and identify defendant.

Inasmuch as this proof shows that the police conduct was reasonable, and as our examination of the array reveals that the photographs were comparable, County Court, in the absence of proof from defendant proving that the procedure was unduly suggestive, correctly refused to suppress this witness's in-court identification of defendant (see, People v Chipp, 75 NY2d 327, 335, cert denied 498 US 833; People v Gipson, 194 AD2d 847, 848). In any event, the People established by clear and convincing evidence that this witness had an independent

---

* This matter originated in County Court and was transferred to Supreme Court for trial.

source for his in-court identification of defendant *(see, People v Rahming,* 26 NY2d 411, 417).

Our next inquiry is whether Supreme Court improperly admitted evidence of uncharged crimes. It is well established that where evidence of an uncharged crime contains more probative value than risk of prejudice to the defendant, the evidence is admissible *(see, People v Chase,* 85 NY2d 493). In our view victim C's testimony and evidence that defendant was arrested on a criminal complaint filed by victim B, which placed his continued release on parole in jeopardy, was relevant to prove defendant's motive and intent. Accordingly, since the probative value of this evidence outweighed the danger of prejudice to defendant, its admission was proper *(see, People v Gutkaiss,* 206 AD2d 584, 585, *lv denied* 84 NY2d 936, 1032).

Applying the appropriate appellate standard of review—whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that the elements of the crime had been proven beyond a reasonable doubt *(see, People v Cabey,* 85 NY2d 417)—we conclude that the verdict was supported by sufficient evidence. Further, our independent review of the evidence discloses that the verdict was also supported by the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490, 495). We note that defendant's argument regarding the veracity of the police testimony and his claim that the jury should have accorded more weight to the testimony of his expert witnesses is unavailing since issues of credibility and the weighing of expert testimony are for the jury *(see, People v Rodriguez,* 192 AD2d 465, 466, *lv denied* 81 NY2d 1079; *People v Barnum,* 175 AD2d 332, 334, *lv denied* 78 NY2d 1126).

Where, as here, defendant's counsel makes numerous pretrial motions, actively participates in the trial by effectively cross-examining witnesses, raising objections, presenting a sophisticated psychological defense and delivers cogent opening and closing statements, a defendant has been provided with meaningful representation thereby precluding a claim that he or she was denied the constitutional right to effective assistance of counsel *(see, People v Flores,* 84 NY2d 184, 187; *People v Molina,* 202 AD2d 521, 522). Consequently, we reject defendant's argument on this point as well as his claim of conflict of interest on the part of his attorneys as it is not supported by the record.

In light of defendant's extensive criminal history that in-

cludes a prior conviction of the crime of rape in the first degree and the horrific nature of the crimes for which he was convicted, Supreme Court's sentencing of him, as a persistent felony offender, to 25 years to life on each count can hardly be deemed excessive or unduly harsh. Moreover, Supreme Court's imposition of consecutive sentences with respect to some of the offenses was not improper because the crimes defendant committed did not arise out of a single incident but rather were distinct and disparate sets of acts committed against two different individuals *(see, People v Danielson,* 184 AD2d 723, 725, *lv denied* 80 NY2d 928; *People v Glass,* 179 AD2d 774, 775, *lv denied* 79 NY2d 1049).

We have considered defendant's remaining contentions and find them unpersuasive.

Cardona, P. J., Casey, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.

