■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAMBERS GILLIS, Appellant. [632 NYS2d 671] —White, J. Appeals (1) from a judgment of the County Court of Ulster County (Vogt, J.), rendered May 12, 1992, upon a verdict convicting defendant of the crime of manslaughter in the first degree, and (2) by permission, from an order of said court (Bruhn, J.),

entered October 26, 1994, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

The bludgeoned body of Marianne Freeman was found in her residence in the Town of Gardiner, Ulster County, on May 6, 1991. On May 14, 1991, defendant went to the Town of New Paltz Police Department after being informed by a friend that the State Police wanted to speak to him about Freeman's homicide. The State Police were called and defendant was in their company from 11:40 A.M. until 11:50 P.M. when he finished giving them incriminating oral and written statements which led to his arrest. Following a jury trial, defendant was convicted of the crime of manslaughter in the first degree and sentenced to an indeterminate prison term of 7 to 21 years. Defendant thereafter unsuccessfully moved pursuant to CPL 440.10 to vacate his conviction. Defendant appeals from the judgment of conviction and order denying his CPL 440.10 motion. We shall first consider defendant's direct appeal.

Defendant's first argument is that County Court should have suppressed his incriminating statements as products of improper custodial interrogation. The suppression hearing record shows that defendant voluntarily came to the police station and agreed to go with the State Police to their barracks; he was not handcuffed or physically restrained and was repeatedly left unguarded. The atmosphere in the interview room was not coercive and the questioning was investigatory, not accusatory or continuous; defendant was fed and allowed to sleep alone in the unlocked interview room. In view of these facts, we find that defendant's interrogation was noncustodial since an ordinary person in his position, innocent of any crime, would think he was free to go (*see, People v Centano*, 76 NY2d 837, 838; *People v Smith*, 214 AD2d 845, 847; *People v Tankleff*, 199 AD2d 550, 552, *affd* 84 NY2d 992).

Defendant's argument that his statement was not voluntary is meritless since the record discloses that he was given his *Miranda* warnings twice and he acknowledged that he understood them (*see, People v Hicks*, 194 AD2d 930, 931, *lv denied* 82 NY2d 719). Moreover, considering the totality of the circumstances, it is evident that defendant's will was not overborne nor his statement coerced (*see, People v Linderberry*, 215 AD2d 867, 869; *People v Jackson*, 178 AD2d 851, 852, *lv denied* 79 NY2d 1002). Lastly, assuming that the police investigator should not have spoken to defendant at the conclusion of his oral statement when defendant indicated that he wanted to think about giving a written statement, the failure to suppress

the written statement was harmless error, for it merely duplicated the admissible oral statement (*see, People v Nova*, 198 AD2d 193, 195, *lv denied* 83 NY2d 808; *People v Davis*, 91 AD2d 1191).

Defendant next argues that County Court should have given a justification charge. Such a charge need not be given, however, if considering the evidence in the light most favorable to the accused, no reasonable view of the evidence establishes the elements of the defense (*see, People v Reynoso*, 73 NY2d 816, 818). Applying this standard, the defense was not established. There is nothing in the record providing defendant with a reasonable belief that Freeman, an unarmed 47-year-old woman, was about to use deadly physical force against him (*see, People v Hagi*, 169 AD2d 203, 210, *lv denied* 78 NY2d 1011; *see also*, Penal Law § 35.15 [2] [a]). The presence of Freeman's dog did not pose a deadly threat to defendant as there is no evidence that the dog was a large ferocious one trained to attack upon command of its master (*see*, Penal Law § 10.00 [13]). Additionally, there is no evidence that defendant attempted to flee prior to using deadly physical force upon Freeman (*see, People v McMoore*, 214 AD2d 893, 894).

We find that County Court did not abuse its discretion in denying defendant an adjournment since the testimony of the witness who refused to testify would have been cumulative (*see, People v Wright*, 192 AD2d 875, 876, *lv denied* 82 NY2d 809; *People v Saddlemire*, 121 AD2d 791, 793-794, *lv denied* 68 NY2d 917). Defendant's reliance on *People v Antommarchi* (80 NY2d 247) is misplaced because the jury selection and trial were held prior to that decision, which is to be applied prospectively only (*see, People v Mitchell*, 80 NY2d 519, 529). We shall not consider defendant's arguments regarding the prosecutor's allegedly improper comments during summation because the majority were not preserved for review by appropriate objection; as to the others, defendant failed to request curative instructions or move for a mistrial (*see, People v Medina*, 53 NY2d 951, 953; *People v Murphy*, 188 AD2d 742, 744, *lv denied* 81 NY2d 890). In any event, defendant has failed to show that the prosecutor's remarks had " 'a decided tendency to prejudice the jury' " (*People v Halm*, 81 NY2d 819, 821, quoting *People v Ashwal*, 39 NY2d 105, 110).

We shall not disturb the sentence imposed upon defendant since, under the circumstances of this case, it is not harsh or excessive (*see, People v Kenyon*, 188 AD2d 905, 906, *lv denied* 81 NY2d 842; *People v Johnstone*, 184 AD2d 929, *lv denied* 80 NY2d 905).

We now turn to defendant's CPL 440.10, motion which was predicated upon alleged violations of the *Rosario* rule and a claim of ineffective assistance of counsel. The often-stated *Rosario* rule is that the People are required to provide the defendant with any recorded statement of a prosecution witness made to the police, District Attorney or the Grand Jury related to that witness's trial testimony (*People v Rosario*, 9 NY2d 286, 289, *cert denied* 368 US 866). Defendant maintains that the People violated this rule by failing to provide him with the notes pathologist Geetha Natarajan made during the autopsy she performed on Freeman. Inasmuch as defendant concedes that these notes were not in the People's possession, the critical issue is whether they were in its control (*see, People v Flynn*, 79 NY2d 879, 882).

In *People v Washington* (86 NY2d 189), the Court of Appeals held that an audiotape made by an associate medical examiner of the Office of the Chief Medical Examiner of the City of New York (hereinafter OCME) did not constitute *Rosario* material. The basis for the holding is that the People lacked control over the audiotape since OCME is not a law enforcement agency and is independent of and not subject to the control of the prosecutor's office (*see, People v Washington, supra; People v Ford*, 211 AD2d 438; *People v Nova*, 206 AD2d 132).

Similarly, the element of control is lacking in this case since Natarajan was an independent contractor employed by the State Police as a forensic pathology consultant. In such a capacity, she was working according to her own methods without being subjected to the control of the State Police (*see generally, Searle & Co. v Medicore Communications*, 843 F Supp 895, 904-905 [discussing duties and obligations of independent contractors]). Accordingly, we find that her notes were not *Rosario* material. Likewise, the X rays of Freeman's dog were not *Rosario* material as they are not "written or recorded statement[s]" made by a prosecution witness (CPL 240.45 [1] [a]).

To establish a *Rosario* violation, it is incumbent upon a defendant to show that the claimed *Rosario* material was available and was not turned over to the defense (*see, People v Lent [Wild Bill]*, 204 AD2d 855, 856, *lv denied* 84 NY2d 869, 873; *People v Boyette*, 201 AD2d 490, 491, *lv denied* 83 NY2d 909; *People v Miles*, 136 AD2d 958, 959, *lv denied* 71 NY2d 971). Defendant's final *Rosario* argument, premised upon the assertion that investigators' notes of their interviews with George Broglia, a prosecution witness, were not included in the "voluminous" amount of *Rosario* material turned over to him after trial, falls far short of satisfying his burden. In particu-

lar, defendant's experienced counsel, who made reference to the interviews during his cross-examination of Broglia, made no objection or otherwise indicated that notes had not been turned over. We further note that defendant's speculation that the prosecutor must have taken notes of his interview with Broglia does not establish that such notes were made or were available. Also, in the absence of any authority, we do not subscribe to defendant's proposition that the People are obligated to indicate, on the record, each item of *Rosario* material being made available to the defense.

Finally, inasmuch as defendant's ineffective assistance of counsel claim rests solely on the various *Rosario* violations which we have found meritless, County Court correctly concluded that the claim was devoid of merit. We have examined defendant's remaining contentions and find them unpersuasive. For these reasons, we affirm.

Cardona, P. J., Mikoll, Mercure and Casey, JJ., concur. Ordered that the judgment and order are affirmed.