■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENNIS A. GARRETTE, JR., Appellant. [636 NYS2d 433] —Spain, J. Appeal from a judgment of the County Court of Montgomery County (Aison, J.), rendered March 21, 1994, upon a verdict convicting defendant of two counts of the crime of murder in the second degree.

On November 28, 1991 68-year-old Stanley Lees (hereinafter decedent) was found dead in his apartment in the City of Amsterdam, Montgomery County; items including, *inter alia*, money, a VCR and a camera were missing from the apartment and decedent's car was also missing. Decedent had been "hog tied", i.e., his hands and lower legs were bound together with a piece of electrical cord; a T-shirt, which had been stuffed inside his mouth, was held in place by another piece of electrical cord which was tied around the back of his head and neck. The doctor who performed the autopsy indicated that decedent had succumbed as a result of traumatic asphyxia due to lack of air or lack of oxygen resulting from "compressive or constrictive injuries to the neck and also due to a gag in the back of the throat".

On May 14, 1992 defendant and Louis Tenace were separately questioned by police officers who were investigating the homicide; Amsterdam Police Department Detective Michael Villa participated in the questioning of defendant. Villa testified at the *Huntley* hearing and at the trial that he advised defendant of his *Miranda* rights, that defendant acknowledged understanding each of his rights and that he waived those rights. Thereafter, defendant signed a written statement which

included a recitation of his *Miranda* rights and a waiver of those rights. Tenace also signed a written statement; defendant's and Tenace's written statements incriminated each other.

Defendant, in his written statement, stated that while he and Tenace were walking on State Street in the City of Schenectady, Schenectady County, decedent offered them a ride. Defendant and Tenace accepted the offer and eventually were taken to decedent's apartment in Amsterdam; once inside the apartment decedent made sexual advances toward them, which prompted defendant to punch decedent four times in decedent's face and head. Tenace then hit decedent in the head from behind with a statue; upon decedent falling to his knees defendant struck him three more times before Tenace hit him again with the statue and decedent fell to the floor, face down. Defendant and Tenace proceeded to clean the apartment of anything they had touched and they removed other items including decedent's VCR, his Polaroid camera and some money which had been in decedent's wallet. Defendant also admitted that in response to Tenace's comment, "We have to shut him up," defendant responded, "Well, do whatever you have to do." Defendant tossed an electrical extension cord to Tenace and Tenace, in defendant's presence, tied-up decedent; he denies being present when Tenace "gag tied" decedent. They took decedent's car and drove to the Village of Scotia, Schenectady County, where it was abandoned.

Defendant and Tenace were each indicted in separate nine-count indictments. Defendant and Tenace were tried together at a single trial by separate juries. Defendant was found guilty of two counts of murder in the second degree, depraved indifference murder (Penal Law § 125.25 [2]) and felony murder (Penal Law § 125.25 [3]). Defendant was sentenced to an indeterminate term of incarceration of 25 years to life for each conviction, the sentences to run concurrently. Defendant appeals.

We affirm. Initially, we reject defendant's contention that his confession was not voluntary. County Court conducted a *Huntley* hearing at which three police officers testified, including Villa, regarding the events leading up to and including defendant's execution of the written statement. Defendant produced no witnesses at the hearing. County Court gave full credence to the officers' uncontroverted testimony and found that defendant had been properly apprised of his *Miranda* rights (*see, People v Hicks*, 194 AD2d 930, 931, *lv denied* 82 NY2d 719) and that the statement was voluntarily made.

Defendant's contention that the evidence presented was insufficient to support the conviction for depraved indifference murder and felony murder is also without merit. Penal Law § 125.25 (2) states:

"A person is guilty of murder in the second degree when * * *

"[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

Depraved indifference is not akin to mere recklessness and generally requires conduct that is appropriately considered "imminently dangerous and presents a grave risk of death" (*People v Roe*, 74 NY2d 20, 24). Such conduct may be characterized as exhibiting no sense of concern for the welfare of others (*see, People v Fenner*, 61 NY2d 971, 973). In our view, defendant's participation in the events which led to decedent's death was more than passive. After a careful review of the record and viewing the evidence in the light most favorable to the People (*see, People v Contes*, 60 NY2d 620, 621), we conclude that defendant's conduct, which consisted of, *inter alia*, striking decedent numerous times in concert with Tenace, who forcibly hit decedent with a statue, and his complicity in Tenace's "hog tying" and subsequent "gag tying" of the 68-year-old decedent, who was left bound and gagged alone in his apartment, was wanton and exhibited absolutely no sense of concern for decedent's welfare (*see, People v Fenner, supra*, at 973); as such, it supports the conviction for "depraved indifference" murder. Additionally, the fact that decedent died of asphyxiation fully supports our conclusion that defendant's participation in the severe beating, binding and gagging of decedent exhibited a depraved indifference to human life.

There is also sufficient evidence in the record to support defendant's conviction of felony murder. Penal Law § 125.25 (3) permits a defendant to be charged with felony murder where the defendant "[a]cting either alone or with one or more other persons * * * commits or attempts to commit robbery, burglary * * * and * * * causes the death of a person other than one of the participants". It is settled law that, under this statute, a defendant's actions must contribute to the cause of death (*see, People v Matos*, 83 NY2d 509, 511); said conduct must "set[ ] in motion the events which ultimately result in the victim's death" (*supra*, at 511).

Here, defendant admitted to participation in the events which caused decedent's death. Further, the record reveals suf-

ficient additional evidence to support defendant's commission of the necessary underlying felony. Defendant admitted to actively participating in the removal of certain items of decedent's property from the apartment, including a Polaroid camera and a VCR which he and Tenace later sold. Notably, the record reveals that defendant showed the camera to a witness and stated that he had stolen it from an "old guy's house"; he also told a witness that he and Tenace had taken some wallets from decedent's apartment. He also left the scene in decedent's car. Again viewing the evidence in the light most favorable to the People (see, People v Contes, supra), we conclude that the evidence supports the felony murder conviction.

During the course of the trial the local media reported that Troy Tenace, a relative of Tenace, had been arrested in Ohio and charged with the murder of an elderly man. County Court thereafter questioned the individual jurors on each of the juries and concluded that the jurors assigned to the Tenace trial had openly discussed the Ohio incident and had commented on whether such conduct "runs in the family", thereby implying Tenace's guilt. Thereafter County Court granted Tenace's motion for a mistrial; defendant's motion for a mistrial (see, CPL 280.10) was denied. The record reflects that defendant's counsel was given an opportunity to question each juror after the court individually questioned each juror in counsel's and defendant's presence regarding their exposure, if any, to the media report. The individual jurors did not report any knowledge of the media report and defendant's counsel appeared to be satisfied. Further, defendant's contention that he was prejudiced by the removal of Tenace during the course of the trial is unavailing. Under circumstances such as these, County Court has the discretion to grant a mistrial and, absent an abuse of discretion, this Court will not interfere with that discretion (see, People v Ortiz, 54 NY2d 288, 292; Hall v Potoker, 49 NY2d 501, 505).

Defendant contends that a mistrial was warranted because of the admission of highly prejudicial testimony regarding uncharged bad acts by defendant. Specifically, a prosecution witness testified that within days before the killing defendant stated that he and Tenace were going "queer bashing"; County Court thereafter directed that the testimony be stricken and gave an appropriate curative instruction. We conclude that County Court did not abuse its discretion (see, People v Birdsall, 215 AD2d 878, 879-880, lv denied 86 NY2d 840; People v Linderberry, 215 AD2d 867, 870, lv denied 86 NY2d 844). De-

fendant further argues that the admission of statements made by Tenace while defendant's jury was in the courtroom are also grounds for a mistrial. We disagree. The statements by Tenace which defendant complains about were either not revealed to his jury or were markedly similar to statements made by defendant himself. Defendant also attempts to minimize the similarity between statements made by him to statements made by Tenace, noting that the similarity "is not the issue". The Court of Appeals has held, however, that "we may discount the possibility of real prejudice when the defendant himself has made a statement which is almost identical to the codefendant's" (*People v Payne*, 35 NY2d 22, 27).

Finally, we reject defendant's allegation that the jury selection process was tainted. The dismissed juror was clearly biased in defendant's favor and County Court properly exercised its discretion in the manner by which the new foreperson was selected (*see*, CPL 270.15 [3]). Moreover, defendant failed to show any prejudice resulting from the court's decision and his position on the selection of the new foreperson is not supported by any legal authority.

We have reviewed defendant's remaining contentions and find them to be without merit.

Cardona, P. J., Mikoll, Crew III and Peters, JJ., concur. Ordered that the judgment is affirmed.