■ The People of the State of New York, Respondent, v Rodney A. Dove, Appellant. [650 NYS2d 444] —Cardona, P. J. Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered March 14, 1994, upon a verdict convicting defendant of the crimes of murder in the second degree, robbery in the first degree and grand larceny in the fourth degree.

On July 5, 1993, defendant and Michael Wood robbed a 77-year-old man in his apartment in the City of Elmira, Chemung County. During the course of the robbery, the victim died after

Wood stabbed him 28 times about the neck and chest with a knife. Defendant and Wood then stole the victim's car and fled to Williamsport, Pennsylvania, where they were arrested on July 6, 1993. Defendant was ultimately indicted for felony murder, robbery in the first degree and grand larceny in the fourth degree.

Following a jury trial, defendant was found guilty of all counts and was sentenced as a second felony offender to an indeterminate term of imprisonment of 25 years to life for the murder conviction, $12^{1}/_{2}$ to 25 years for the robbery conviction, the sentences to run concurrently, and 2 to 4 years for the grand larceny conviction, the sentence to run consecutively with the murder and robbery sentence. Defendant appeals.

Initially, defendant argues that the felony murder conviction was not supported by legally sufficient evidence. A person is guilty of felony murder when that person, alone or with one or more persons, commits or attempts to commit an enumerated felony and "in the course of and in furtherance of such crime * * * he [or she], or another participant, * * * causes the death of a person other than one of the participants" (Penal Law § 125.25 [3]). According to defendant, the People failed to adduce proof establishing that his actions contributed to the cause of death and that he "set[ ] in motion the events which ultimately result[ed] in the victim's death" (*People v Matos*, 83 NY2d 509, 511; *see, People v Hernandez*, 82 NY2d 309; *People v Garrette*, 223 AD2d 749, 751, *lv denied* 87 NY2d 1019). Defendant also maintains that the People failed to present sufficient proof as to the requisite underlying felony, in this case, robbery in the first degree (*see*, Penal Law § 160.15 [1]).

At trial, there was evidence presented that the victim would carry significant amounts of cash in his wallet and was known in his neighborhood as a person who would sell cigarettes, cash checks and make cash advances on food stamps. On July 4, 1993, at approximately 9:00 P.M., defendant and his friend Susan Mitchell went to the victim's house so that Mitchell could get a $10 advance on her food stamps to buy beer. After they left, defendant, who had earlier been complaining to other friends about his money problems, commented to Mitchell about the "wad of money" in the victim's wallet.

Witnesses recounted that defendant and Wood drank numerous alcoholic beverages that evening and sometime before 11:00 P.M. defendant said that he was in a "little fight" with someone out on the street. Reynaldo Rios testified that around that time he encountered defendant at a party where defendant seemed to be in a belligerent mood and stated, "I'm ready to put a

head out," which according to Rios meant, in street slang, that he was ready for a fight. Rios further testified that defendant stated, "I'm ready to do this, ready to get paid." Rios testified that "I'm ready to get paid" could mean robbing someone. Rios also testified that defendant and Wood were beginning to get "carried away" and he was concerned about what they were going to do.

On July 5, 1993, around 12:30 A.M., Frances Nobles, a resident of the apartment complex where the victim resided, saw defendant and Wood enter the victim's apartment without knocking and leave together approximately 15 minutes later. In his voluntary statement, defendant admits going to the victim's apartment with Wood but claims that he only wanted to buy cigarettes and was "very surprised and shocked" when Wood began to stab the victim. Although defendant stated that he left the apartment after the violence began and came back in only briefly, the footprints that were left in the victim's blood indicate that there were at least two other persons in the apartment besides the victim. After the murder, defendant admits leaving the scene in the victim's car and using the victim's cash to buy food and supplies.

In his statement, defendant indicated that, on the way to Williamsport where Wood had friends, they abandoned the victim's car and hitchhiked the rest of the way. Before leaving the car, defendant persuaded Wood not to set it on fire, "as it would attract too much attention". Witnesses testified that defendant and Wood had a "good sum of money" in large bills while in Williamsport and they paid for, *inter alia,* all the drinks while they were "bar hopping". When defendant was arrested he had $50 on his person. The victim's abandoned car contained his wallet, identification and other items stolen from his apartment. A beer can was also found in the victim's car with defendant's fingerprint on it. A search by police of a home where defendant and Wood visited in Williamsport uncovered the victim's gold watch and other belongings. A few days following the arrest, an Elmira police officer, who was guarding defendant prior to a court appearance, denied defendant's request to have his shackles removed. In response, defendant said "I'll kill you next" in a loud and threatening manner.

Viewing the evidence submitted in a light most favorable to the People (*see, People v Contes*, 60 NY2d 620, 621), we conclude that there was legally sufficient evidence to support the conviction of robbery and establish that defendant's conduct was instrumental in setting in motion the events which culminated in the victim's death. Moreover, given the substantial proof of

guilt presented, we find that neither the robbery nor murder conviction was against the weight of the evidence (see, *People v Bleakley*, 69 NY2d 490, 495).

Next, defendant raises several challenges to County Court's evidentiary rulings at trial. Specifically, defendant contends that he was denied a fair trial by the admission in evidence of an uncharged crime, namely, proof that he engaged in a "little fight" a few hours before the robbery and murder. However, in our view, this evidence was part of the narrative of the events leading up to the crimes and was "relevant to defendant's intent rather than to propensity and was inextricably interwoven with the crime charged and, therefore, relevant to defendant's state of mind" (*People v Sessoms*, 200 AD2d 850, 851, *lv denied* 83 NY2d 915; *see, People v Simpson*, 132 AD2d 894, 895-896, *lv denied* 70 NY2d 937; *see also, People v Gonsa*, 220 AD2d 27, 30-31). Thus, defendant's right to a fair trial was not prejudiced by the testimony.

Next, defendant contends that a photograph of the victim when he was healthy was irrelevant to the crimes charged and should not have been admitted into evidence. We agree. Significantly, pictures of a victim when he or she was alive should not be introduced into evidence unless relevant to a material fact to be proven at trial (*see, People v Stevens*, 76 NY2d 833, 835-836). Nevertheless, although admission of this photograph into evidence was improper, based upon all the evidence of guilt this was harmless error (*see, supra*, at 836; *People v Stuart*, 216 AD2d 682, 684, *lv denied* 86 NY2d 803). Defendant also argues that the victim's watch, wallet, pocket knife, tool box and pictures of the victim's car were improperly admitted into evidence without proper foundation. However, the victim's son testified that they belonged to his father and, even if they were prematurely admitted into evidence before the police officers could testify as to their relevance, any error was harmless.

We also do not find any error in County Court's felony murder instruction to the jury. We find that the court unequivocally informed the jury that robbery was a necessary element of felony murder and, in order to find defendant guilty of felony murder, it must find, *inter alia*, that defendant "committed the crime of robbery". Moreover, County Court properly charged the jury that it was defendant's burden to establish the affirmative defense to the felony murder count charged (*see*, Penal Law § 125.25 [3]; *see also*, Penal Law § 25.00 [2]). We find defendant's remaining arguments with respect to the court's charge unavailing.

We reject defendant's challenge to the sentence imposed. Given defendant's extensive criminal history, the nature of the subject crimes and the fact that the sentences were within the predicate felon sentencing guidelines, we find no reason to conclude that the sentence imposed was harsh and excessive or should be reduced in the interest of justice (*see*, *People v Morgan*, 214 AD2d 809, 811, *lv denied* 86 NY2d 783). Defendant further argues that County Court abused its discretion (*see*, Penal Law § 70.25 [1]) by imposing a consecutive sentence with respect to his conviction of grand larceny. However, we find no basis to disturb County Court's finding that the grand larceny occurred after the robbery and murder, thus permitting a consecutive sentence (*see*, *People v Brown*, 80 NY2d 361, 364; *People v Hernandez*, 186 AD2d 471, 474, *affd* 82 NY2d 309). The indictment separates the crimes as independent acts and none of the acts which constitute grand larceny (*see*, Penal Law § 155.30 [8]) were also a "material element" of the robbery and murder charges (Penal Law § 70.25 [2]).

Finally, we have examined defendant's remaining contentions, including his challenge to the admission into evidence of the blood-stained corduroy pants and the introduction of testimony that defendant claims constituted postarrest silence, and find them to be without merit or harmless error.

Mikoll, Yesawich Jr., Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.