■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD S. PARKINSON, Appellant. [702 NYS2d 216] —Peters, J. Appeal from a judgment of the County Court of Columbia County (Leaman, J.), rendered April 3, 1998, upon a verdict convicting defendant of the crimes of attempted aggravated assault on a police officer (two counts) and reckless endangerment in the first degree.

Defendant's convictions stem from a shooting incident which occurred on July 20, 1997 just outside his apartment in the Town of Clermont, Columbia County. On that date, defendant arrived home at about 10:00 P.M. One hour later, he loaded his rifle with several rounds of ammunition, walked four to seven feet outside the door of his apartment and fired two rounds into the air.

Defendant's landlord, as well as various neighbors, heard the shots. Calls were placed to the State Police who responded promptly. State Troopers Brian Colwell and John La Plante were met by William Bentley, the owner of the multiunit apartment building, who directed them toward defendant's apartment. As the officers approached, they heard defendant talking in a loud voice to his girlfriend, making threats to kill her or anyone else who got in his way. As defendant walked outside of his apartment holding the rifle, the officers identified themselves and repeatedly ordered him to drop his weapon. Rather than complying, he pointed his rifle in their direction. At that point, La Plante fired a shot at him and defendant fired a shot in return. They thereafter repeatedly shot at him, causing him to drop to the ground and release his rifle. Ordered to show his hands, defendant instead sat up and attempted to once again reach for his rifle; Colwell fired once more. Defendant then complied with the officers' directions and was handcuffed. As a result of this incident, defendant suffered three gunshot wounds; the officers were not injured.

Indicted on two counts of attempted aggravated assault on a police officer and one count of reckless endangerment in the

first degree, defendant pleaded not guilty. After discovery and *Huntley, Ventimiglia* and *Sandoval* hearings, a trial was held wherein defendant aggressively asserted that he did not fire the first shot at the officers or threaten them in any way. After a lengthy trial during which the jury had the opportunity to hear the testimony of numerous witnesses, including the officers involved in the incident, defendant, his girlfriend and his immediate neighbors, defendant was found guilty on all counts and thereafter sentenced to consecutive terms of imprisonment.

Of the numerous purported errors raised by defendant on appeal, only two merit discussion. Clearly, the record reveals that there was a real issue as to the instigating conduct which triggered the actions of the officers during this incident. Defendant's assertion that he never fired a weapon at them was consistent with, *inter alia,* a description of the incident contained in a teletype emanating from the State Police.* He further contends that the People withheld *Rosario* material which was critical to his defense by failing to disclose statements or testimony concerning an investigation conducted by the Division of State Police as a result of the officers' discharge of their service weapons. These statements, he claims, likely constituted *Brady* material that would have caused a different result at trial.

While defendant does not allege that this documentation was in the People's possession, the critical issue is whether it was in their control (*see, People v Gillis,* 220 AD2d 802, *lv denied* 87 NY2d 921). However, we need not answer that vexing question (*compare, People v Smith,* 235 AD2d 639, 641, *lv denied* 89 NY2d 1041, *with Matter of Ferrara v Superintendent, N. Y. State Police,* 235 AD2d 874, *lv denied* 90 NY2d 829) because the record wholly fails to establish that any such statements and/or testimony actually exist. As speculation concerning the existence of such accounts or statements is insufficient to establish a *Rosario* or *Brady* violation (*see, People v Moore,* 244 AD2d 776, 777, *lv denied* 91 NY2d 975; *People v Gillis, supra,* at 806), we next address the sufficiency of the evidence.

Recognizing that we must view the evidence in a light most favorable to the People and determine whether there is any

---

* Such teletype, admitted into evidence by the defense, describes the officers' initial response to the 911 call. It thereafter states that "shortly thereafter [defendant] exits the apartment with a Marlin 30/30 caliber rifle in hand. [Defendant] was ordered to drop same which he failed to do, instead training the rifle upon the members. Consequently the members discharged their issued weapons at [defendant], causing the above stated injuries".

valid line of reasoning, together with permissible inferences, which could lead a rational person to the conclusion reached by the jury (*see, People v Miller*, 226 AD2d 833, 835, *lv denied* 88 NY2d 939), and mindful that competing inferences may be drawn from the evidence which would not preclude a jury from making a choice between those inferences (*see, People v Greiner*, 156 AD2d 813, 816, *lv denied* 75 NY2d 919), the entire record of this three-week-long trial was considered. While record evidence exists to support defendant's version of the events, we also find ample testimony and evidence which would lead a rational person to the conclusion that defendant fired his weapon after the officers properly identified themselves. Both officers testified that they saw the muzzle flash from defendant's rifle. A neighbor testified that she heard defendant's rifle go off while the officers were yelling at him to cease and desist while firing their weapons. Viewing the evidence as a whole, it is sufficient to enable a rational person to conclude that defendant committed the crimes of attempted aggravated assault on a police officer and reckless endangerment in the first degree.

In further exercising our factual review power (*see, People v Bleakley*, 69 NY2d 490, *lv denied* 72 NY2d 856), examining the evidence in a neutral light with due deference to the jury's first-hand evaluation of the witness' testimony, we cannot conclude that the verdict was against the weight of the credible evidence. Mindful that issues of credibility and weight of the evidence are matters within the province of the jury (*see, People v Day*, 215 AD2d 894, 895, *lv denied* 86 NY2d 793), as is its resolution of conflicting evidence (*see, People v Porter*, 220 AD2d 884, 885, *lv denied* 87 NY2d 1023), we cannot conclude that the determination rendered was unsupported (*see, People v Vecchio*, 240 AD2d 854, 856).

We further find no basis to reverse the conviction in the interest of justice due to evidence of prior bad acts being brought to the attention of the jury. With defendant having failed to object to the admission of such evidence at trial, we do not find the issue properly preserved (*see, People v Herring*, 227 AD2d 658, 660, *lv denied* 88 NY2d 986). Were we to address it, we would conclude that testimony concerning matters which were the subject of a *Ventimiglia* notice did not exceed the scope of County Court's ruling and that other bad acts were properly admitted (*see, People v Gonsa*, 220 AD2d 27, *lv denied* 89 NY2d 923).

We similarly reject defendant's allegations of ineffective assistance of counsel. Notably, defendant was advised by County Court that his retained attorney had been removed from a

previous criminal case upon such basis and despite such knowledge, defendant unequivocally indicated that he wished his counsel to remain. Upon our review, we find that despite a paucity of evidentiary objections, counsel provided him with meaningful representation (see, People v Baldi, 54 NY2d 137; People v McLean, 243 AD2d 756, lv denied 91 NY2d 928).

Having finally considered and rejected defendant's challenge to the indictment (see,. People v Iannone, 45 NY2d 589), we hereby affirm the judgment of conviction.

Cardona, P. J., Crew III, Spain and Graffeo, JJ., concur. Ordered that the judgment is affirmed.