Donald **PARKINSON**, Plaintiff–Appellee,

v.

Beth **COZZOLINO**, Columbia County District Attorney and Catherine Leahy, Columbia County Assistant Attorney, Defendants–Appellants,

New York State Department of Correctional Services, Glen S. Goord, Commissioner, Department of Correctional Services, James Bertram, Columbia County Sheriff, and County of Columbia, Defendants.

No. 00–0126.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 2000.

Decided Jan. 4, 2001.

moved for summary judgment, asserting that absolute prosecutorial immunity shielded them from liability. The District Court held that Cozzolino and Leahy were absolutely immune from liability for withholding the prosthesis up to the point of Parkinson's conviction, but that they were not entitled to either absolute or qualified immunity from liability for withholding the leg after Parkinson's conviction while his criminal appeal was pending. Cozzolino and Leahy filed this interlocutory appeal.

For the reasons given below, we conclude that Cozzolino and Leahy are entitled to absolute prosecutorial immunity from liability for withholding Parkinson's prosthesis during the appeal of his criminal conviction. Accordingly, we reverse and remand for entry of judgment in favor of Cozzolino and Leahy on the ground of absolute prosecutorial immunity.

George A. Huwel, Huwel & Mulhern, Franklin Square, NY, for Plaintiff–Appellee.

Michael J. Hutter, Thuillez, Ford, Gold & Johnson (Karen A. Butler, On the Brief), Albany, NY, for Defendants–Appellants.

STRAUB, Circuit Judge:

Defendants–Appellants Beth Cozzolino, Columbia County District Attorney, and Catherine Leahy, Columbia County Assistant District Attorney, appeal from an order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*), denying in part their motion for summary judgment. Plaintiff–Appellee Donald Parkinson had filed claims against Cozzolino and Leahy under 42 U.S.C. §§ 1983, 1988, and 12132, alleging violations of his constitutional and statutory rights resulting from Cozzolino's and Leahy's retention of his prosthetic leg for use as evidence during his criminal trial and appeal. Cozzolino and Leahy

## BACKGROUND

At approximately 11:00 p.m. on July 20, 1997, Donald Parkinson walked outside of his Clermont, New York apartment with a loaded rifle and fired two shots into the air. *People v. Parkinson*, 268 A.D.2d 792, 792, 702 N.Y.S.2d 216, 217 (3d Dep't 2000). Parkinson's landlord and neighbors heard the shots and called the state police. *Id.*, 702 N.Y.S.2d at 217. New York State Troopers arrived at the scene shortly, and as they approached Parkinson's apartment they heard him talking in a loud voice to his girlfriend, making threats to kill her or anyone else who got in his way. *Id.*, 702 N.Y.S.2d at 217. Parkinson then walked outside his apartment holding the rifle. *Id.*, 702 N.Y.S.2d at 217. The officers identified themselves and repeatedly ordered Parkinson to drop his weapon. *Id.*, 702 N.Y.S.2d at 217. Parkinson did not comply with the troopers' orders, but rather pointed his rifle in the officers' direction. *Id.*, 702 N.Y.S.2d at 217. One officer fired at Parkinson, and Parkinson fired a shot in return. *Id.*, 702 N.Y.S.2d at 217. The officers then fired several suc-

cessive shots at Parkinson, causing him to drop to the ground and release his rifle. *Id.,* 702 N.Y.S.2d at 217–18. When the officers approached Parkinson, he attempted to reach for his rifle again; one officer fired once more. *Id.,* 702 N.Y.S.2d at 218. Parkinson then complied with the officers' directions and was handcuffed. *Id.,* 702 N.Y.S.2d at 218. The officers were not injured in the shoot-out, but Parkinson suffered three gunshot wounds. *Id.,* 702 N.Y.S.2d at 218. One bullet entered the prosthesis that Parkinson wore on his left leg[1]; another, his left buttock; and the third, his right chest area. Parkinson was taken to the emergency room.

On July 25, 1997, prior to Parkinson's discharge from the hospital, the state police secured his prosthesis for possible use as evidence in any forthcoming criminal prosecution, and kept the prosthesis in its custody. This action was taken pursuant to instructions by Cozzolino and Leahy. Parkinson was issued crutches and was sent to Columbia County Jail pending indictment.

During the pendency of the indictment, Parkinson and his attorney requested that the prosthesis be returned to him, but Leahy refused, asserting that the prosthesis had evidentiary value and thus had to be preserved. Parkinson was then indicted on two counts of attempted aggravated assault on a police officer and one count of reckless endangerment in the first degree. He was released on bail, still without his prosthesis. Trial commenced in the County Court of Columbia County in January 1998. During trial, the State introduced the prosthesis into evidence, and the defense also used the prosthesis in an attempt to prove that Parkinson was lying on the ground when he was shot. Parkinson was convicted on all counts in the indictment.

At sentencing, Parkinson asked the trial judge, the Honorable John G. Leaman, to order the return of his prosthesis. The State, however, argued that its retention was necessary pending any appeal taken by Parkinson. Judge Leaman thus directed the state police to hold the leg. On April 3, 1998, Parkinson was sentenced to a term of three to six years' imprisonment. Parkinson filed a notice of appeal on April 8, 1998.

On April 19, 1998, while incarcerated, Parkinson wrote New York Supreme Court Justice John G. Connor, asking for assistance in having his prosthesis returned. In a written response to Parkinson, Justice Connor said that he had converted Parkinson's letter into an Order to Show Cause and had prepared a Writ of Mandamus directed at Cozzolino, requiring her to show cause why she should not be held responsible for the return of evidentiary matter belonging to Parkinson. On June 18, 1998, Justice Connor held a show cause hearing, and, by a decision and order dated July 16, 1998, ordered that the leg be returned to Parkinson. Justice Connor found that "retention of [Parkinson's] leg constitutes cruel and unusual punishment as defined by the Eighth Amendment of the U.S. Constitution" and that "[Cozzolino's] deliberate indifference to [Parkinson's] need for his prosthetic leg, and the retention of the same, was arbitrary, illegal and inexcusable."

Cozzolino and the state police then brought a special proceeding to vacate Justice Connor's decision. Justice Anthony Carpinello of the New York Appellate Division for the Third Department issued an Order to Show Cause to vacate Justice Connor's order, and held a hearing. During the hearing, a stipulation was agreed upon, pursuant to which Cozzolino would return Parkinson's prosthesis and Justice Connor's decision would not be made part of the record on Parkinson's criminal appeal to the Appellate Division. The prosthesis was returned to Parkinson on October 7, 1998. Ironically, at the same time, Parkinson also received a new prosthesis.

Parkinson then brought an action in the United States District Court for the

---

1. Parkinson's left leg had previously been am- · putated below the knee.

Northern District of New York against Cozzolino, Leahy, the New York State Department of Correctional Services and its commissioner, the county sheriff, and the county, under 42 U.S.C. §§ 1983, 1988, and 12132. The §§ 1983 and 1988 claims alleged that Parkinson was subjected to cruel and inhumane treatment in violation of the United States Constitution. The § 12132 claim alleged that Parkinson was a qualified individual with a disability·who was denied benefits by reason of his disability, in violation of the Americans with Disabilities Act ("ADA"). Cozzolino and Leahy moved for summary judgment, asserting that absolute prosecutorial immunity shielded them from liability.

Magistrate Judge Ralph W. Smith, Jr. issued a report and recommendation in which he found that absolute prosecutorial immunity shielded Cozzolino and Leahy from liability arising from their seizure and retention of Parkinson's leg from the date it was originally seized, July 25, 1997, until the date of Parkinson's conviction, April 3, 1998. Magistrate Judge Smith also, however, recommended that absolute prosecutorial immunity did not protect Cozzolino and Leahy from liability for their retention of the leg after Parkinson's conviction—that is, from April 4, 1998, until October 7, 1998, the date Parkinson's leg was returned.[2] The District Court approved and adopted the Magistrate Judge's report and recommendation in its entirety. This timely appeal followed.[3]

## DISCUSSION

### I. *Appellate Jurisdiction and Standard of Review*

■ "[A]n appeal from the denial of a motion for summary judgment will not or-

dinarily lie. . . ." *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 229 n. 2 (2d Cir.2000) (per curiam) (internal quotation marks omitted). However, the collateral order doctrine allows an appeal from an order denying summary judgment when an assertion of immunity is at issue and only questions of law are involved. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (district court's denial of a defense of absolute immunity, to the extent that it turns on an issue of law, is immediately appealable); *Doe v. Phillips*, 81 F.3d 1204, 1208 (2d Cir.1996) (same), *cert. denied*, 520 U.S. 1115, 117 S.Ct. 1244, 137 L.Ed.2d 326 (1997); *see also Lauro v. Charles*, 219 F.3d 202, 206 (2d Cir.2000) (collateral order doctrine allows review of denial of assertion of qualified immunity when only questions of law are involved). However, "if a factual determination is a necessary predicate to the resolution of whether qualified immunity is a bar, review is postponed." *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992).

The facts at issue here are not in dispute and the issue presented on summary judgment was whether the defendants were, as a matter of law, entitled to absolute immunity for their post-conviction conduct. Accordingly, we have jurisdiction to hear the appeal of the denial of summary judgment.

■ We review a denial of summary judgment *de novo*. *See Lauro*, 219 F.3d at 206.

Summary judgment may be granted only if there is no genuine issue of material fact to be tried and the moving party is therefore entitled to judgment

---

**2.** Magistrate Judge Smith's report and recommendation states that Parkinson's prosthesis was returned to him on October 9, 1998. A New York State Police receipt of property form, however, indicates that the prosthesis was delivered to Parkinson on October 7, 1998. We assume that October 7 is the correct date, though we note that, given our holding, the date is immaterial.

**3.** Magistrate Judge Smith recommended that Parkinson could not maintain his ADA claims against Cozzolino and Leahy. That issue is not before this Court, no final judgment having been entered in the District Court.

as a matter of law. When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Winter v. United States,* 196 F.3d 339, 346 (2d Cir.1999) (citation omitted).

## II. *The Merits*

 It is well-settled that prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity "from claims for damages arising out of prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process.'" *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), *cert. denied,* 520 U.S. 1115, 117 S.Ct. 1244, 137 L.Ed.2d 326 (1997). Thus, prosecutors are "shielded from liability for damages with respect to acts performed within the scope of [their] duties when pursuing a criminal prosecution." *Doe,* 81 F.3d at 1209. "In determining whether a prosecutor enjoys absolute immunity against any particular claim for damages, the courts are to apply a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). The actions of a prosecutor are not covered by absolute immunity merely because they were performed by a prosecutor; rather, the question is whether the actions "are part of a prosecutor's traditional functions." *Doe,* 81 F.3d at 1209. The "ultimate question" is "whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct." *Id.* (internal quotation marks omitted). In addition, "[t]he immunity attaches to [the prosecutor's] function, not to the manner in which he performed

it." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (internal quotation marks omitted). Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant. *See id.*

 Thus, a prosecutor has absolute immunity against a claim for damages based on her performance of tasks as an advocate in the conduct of the prosecution. *See Doe,* 81 F.3d at 1209; *see also Dory,* 25 F.3d at 83 (prosecutor absolutely immune from liability on damages claim that he conspired to present false evidence at criminal trial). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606. The cases thus draw a line between the investigative and administrative functions of prosecutors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected.

The questions before us are whether absolute immunity covers prosecutors' actions after the date of conviction, and, if so, whether a prosecutor, by retaining evidence after a conviction while a direct appeal is pending, is acting in her capacity as an advocate and thus is entitled to prosecutorial immunity.[4]

 The District Court, adopting the Magistrate Judge's recommendation, answered the first question in the negative (and thus did not reach the second question). The court found that Cozzolino and Leahy were not entitled to absolute immunity from liability for their actions after the date of Parkinson's conviction. According to the Magistrate Judge, "[o]nce Parkinson was convicted, the prosecutor's acts had nothing to do with initiating and pur-

---

4. Though both parties briefed the issue, the availability of absolute prosecutorial immunity from liability for actions taken prior to conviction is not before us, as the District Court did not enter a partial final judgment pursuant to Fed.R.Civ.P. 54(b).

suing a criminal prosecution." We disagree. In our view, there is no meaningful distinction between the role of a prosecutor in obtaining a conviction and the role of a prosecutor in striving to uphold that conviction on appeal or to obtain a new conviction upon re-trial. Accordingly, if a prosecutor's conduct prior to conviction is protected by absolute immunity, equivalent conduct pending appeal of the conviction must be afforded the same protection.

Though neither this Court nor the Supreme Court has squarely analyzed the issue, this Court has suggested that prosecutorial advocacy at the appellate stage is covered by absolute immunity. In *Rodriguez v. Weprin*, 116 F.3d 62 (2d Cir.1997), a state inmate brought a § 1983 claim against, *inter alia*, his prosecutors, challenging as unconstitutional a seven-year delay in state appellate review of his conviction. While we did not specifically address the relationship between pre-conviction and post-conviction immunity, we held that "[b]ecause [plaintiff's] complaint against the district attorneys is related to their functions as trial *or appellate advocates*, they are entitled to absolute immunity from suit." *Id.* at 66 (emphasis added). *Rodriguez* supports the view that it is *advocacy* that garners immunity, regardless of whether such advocacy occurs at the trial or appellate stage.

 There can be little doubt that conduct taken with the goal of affirming a conviction on appeal or obtaining a new conviction on re-trial falls within the "traditional" "adversarial" function of a prosecutor. *Doe*, 81 F.3d at 1209. Appeal and re-trial require prosecutors to perform duties that are "intimately associated with the judicial phase of the criminal process." *Id.* (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. 984). Absolute immunity of prosecutors is grounded in the fear that the "public trust of the prosecutor's office would suffer if [the prosecutor] were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler*, 424

U.S. at 424–25, 96 S.Ct. 984. The goal is to preserve the "vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427–28, 96 S.Ct. 984. These policies that undergird absolute prosecutorial immunity apply with no less force once a criminal conviction is obtained. Thus, the need to "allow a public prosecutor ... zealously [to] perform the prosecutorial duties of the office," *Doe*, 81 F.3d at 1209 (internal quotation marks omitted), and the goal of "preserv[ing] the integrity of the judicial process," *id.* (internal quotation marks omitted), militate in favor of extending absolute immunity to the appellate stage of criminal prosecutions.

We are aware of the cases that speak of absolute immunity applying to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. Such language, however, does not serve to delineate the *endpoint* of immunity. Rather, it simply underscores the fact that absolute immunity does not apply to the investigatory duties of a prosecutor, that is, it serves to establish the *starting point* of such immunity. *See id.* at 273–74, 113 S.Ct. 2606 (noting that prosecutor is not entitled to absolute immunity when he "performs the investigative functions normally performed by a detective or police officer" and that prosecutor cannot be acting as advocate before there is probable cause). *See also Carter v. Burch*, 34 F.3d 257, 262 (4th Cir.1994) (noting that *Buckley* dealt with misconduct that occurred before the initiation of the judicial process), *cert. denied*, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).

We are further persuaded by the fact that several of our sister circuits have held that absolute immunity extends to the appellate stages of criminal trials. *See Reid v. New Hampshire*, 56 F.3d 332, 338 (1st Cir.1995) (extending absolute immunity to prosecutor's withholding of exculpatory evidence after defendant's con-

viction); *Carter*, 34 F.3d at 263 (noting that post-conviction actions are entitled to absolute prosecutorial immunity because prosecutor is "still functioning as an advocate for the State"); *Joseph v. Patterson*, 795 F.2d 549, 557 (6th Cir.1986) ("[I]t has been held that the rationale which supports absolute immunity at the trial level applies equally to appeals."), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir.1979) ("We are not persuaded by the plaintiff's argument that immunity should not extend to a prosecutor's conduct in handling appeals. The policy underlying a grant of immunity is the same in both situations."); *see also Houston v. Partee*, 978 F.2d 362, 365–66 (7th Cir.1992) (suggesting that absolute immunity extends to appeals, but denying immunity because the prosecutors were not personally prosecuting the appeal), *cert. denied*, 507 U.S. 1005, 113 S.Ct. 1647, 123 L.Ed.2d 269 (1993). Likewise, trial courts in this and other circuits have applied absolute immunity to shield prosecutors from liability for post-conviction conduct. *See, e.g., Adio–Mowo v. Heinemann*, No. 94 CV 5616, 1995 WL 313146, at *4 (E.D.N.Y. May 15, 1995) ("Absolute immunity can therefore extend to a prosecutor's post-conviction activities where the activities are undertaken as part of the prosecutor's role as an advocate."); *Summers v. Sjogren*, 667 F.Supp. 1432, 1434 (D.Utah 1987) (finding that prosecutor "does not lose immunity merely because she was acting in a post-conviction setting"). We now join these courts in holding that absolute immunity covers prosecutors' actions after the date of conviction while a direct appeal is pending. We express no opinion as to when such immunity ends; the prosecutors' actions in this case occurred while Parkinson's direct appeal was pending, and we have little difficulty extending absolute immunity that far.[5]

■ That brings us to the second question—whether a prosecutor who retains evidence after a conviction while a direct appeal is pending is acting in his capacity as an advocate and is thus entitled to prosecutorial immunity. We hold that the retention of evidence, as a predicate to the presentation of evidence, is critical to the prosecutor's functions as an advocate, and is thus covered by prosecutorial immunity. Absolute immunity's "ultimate question"— "whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct," *Doe*, 81 F.3d at 1209 (internal quotation marks omitted)—must be answered in the affirmative here. *See Buckley*, 509 U.S. at 273, 113 S.Ct. 2606 (holding "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial" to be within a prosecutor's function as an advocate).

The several courts that have confronted the very issue we face here have held that absolute immunity applies when liability is predicated on the retention of property after conviction. *See Thompson v. Walbran*, 990 F.2d 403, 404 (8th Cir.1993) (per curiam) (prosecutor entitled to absolute immunity for retaining convicted defendant's property because it was "important evidence" and, if defendant succeeded on direct appeal or habeas, it would be needed at re-trial); *Coleman v. Turpen*, 697 F.2d 1341, 1344 (10th Cir.1982 ) (per curiam) (prosecutor absolutely immune from liability for retaining property pending appeal because such retention is part of his role in presenting the state's case); *Maxfield v. Thomas*, 557 F.Supp. 1123, 1129 (D.Idaho 1983) (prosecutor absolutely immune from liability for failing to return property after conviction because prosecutor's challenged actions fell within the "function intimately associated with the ju-

---

**5.** Specifically, because the facts of this case do not raise the issue, we do not decide whether absolute immunity extends to collateral proceedings, such as habeas petitions.

dicial phase of the criminal process"). We find compelling the reasoning in these cases.[6] Thus, we hold that absolute immunity shields prosecutors from liability for the retention of evidence after conviction while a direct appeal is pending.

## CONCLUSION

For the foregoing reasons, we reverse the denial of the defendants' motion for summary judgment and remand for entry of judgment in favor of Beth Cozzolino and Catherine Leahy on the ground of absolute immunity.

---

**6.** *Bushouse v. County of Kalamazoo,* 93 F.R.D. 881, 884 (W.D.Mich.1982), held that a prosecutor is not absolutely immune from liability for the failure to return property after the dismissal of a case because the "disposal of property held as evidence during the pendency of trial is clearly an administrative function of prosecutors for which absolute immunity does not lie." In *Bushouse,* however, there was no appeal because the charges against the defendant had been dismissed. *See id.* at 882 n. 1, 884. In such circumstances, there clearly is no advocacy to be performed.