**Bradley YOUNCE, Plaintiff,**

v.

**Dennis HURST, Former Prosecuting Attorney of Jackson County in his personal and official capacity, Defendant.**

**No. 96–CV–71323–DT.**

United States District Court,
E.D. Michigan.
Southern Division.

Aug. 6, 2001.

Thomas M. Donnellan, Flint, MI, for Plaintiff.

David W. Swan, Jackson, MI, Marcoux Allen, Terry J. Klaasen, Jackson, MI, for Defendant.

## *OPINION*

DUGGAN, District Judge.

On March 25, 1996, Plaintiff filed suit against Defendant Dennis Hurst, former Prosecuting Attorney of Jackson County, under 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights in connection with the seizure of his automobile. On May 13, 1996, Defendant filed a motion to dismiss, and/or for summary judgment, which among other things, asserted that this Court should refrain from deciding this matter on the basis of abstention. On April 4, 1997, this Court issued an Opinion and Order dismissing Defendant's motion without prejudice, and stayed further proceedings in this case pending the outcome of proceedings in the state court. After the state court proceedings concluded, Defendant filed a renewed motion to dismiss or for summary judgment on June 27, 2001. For the reasons that follow, Defendant's motion shall be granted.

### Background

This case filed over five years ago, has a long and detailed history. Defendant Dennis Hurst, as the prosecuting attorney for Jackson County, represented the People of the State of Michigan in *People v. Denman*, No. 95–71323–FH (Jackson Co. Circuit Ct.), Judge Charles Nelson presiding. In that case, Marcia Lee Denman pleaded guilty to obtaining money under false pretenses over $100. The investigation of that case revealed that Denman had defrauded hundreds of victims out of a total of nearly half a million dollars.

Prior to being sentenced. Denman transferred her automobile, a 1994 Pontiac Bonneville, to Plaintiff Bradley Younce.[1] At a hearing on November 15, 1995, in the criminal case against Denman, Defendant advised Judge Nelson that certain assets existed which he believed should be made "available for disbursements to the victims with the notation that that would be credited against her restitution order," and offered to prepare such an order. (Hearing Tr. at 5–6). Judge Nelson told Defendant to provide such an order and he would then sign it. (*Id.*). Defendant later presented an order to Judge Nelson which provided, in part, that the 1994 Bonneville "be forfeited to the Office of the Prosecuting Attorney for sale at public auction with said proceeds of said auction to be distributed to the victims on a pro-rata basis," which Judge Nelson signed. (A copy of the order is attached to Def.'s Br. as Ex. A). The Order stated that on November 15, 1995, the prosecutor's office learned of the "fraudulent transfer of title to the 1994 Bonneville on September 26, 1995, by Marsha Denman to her boyfriend," and ordered the vehicle "forfeited." The Michigan State Police seized the vehicle on December 5, 1995, pursuant to Judge Nelson's order.

Plaintiff filed suit against Defendant· in this ˏCourt on March 28, 1996, seeking $50,000 for actual damages, punitive damages, declaratory and injunctive relief, and attorney fees. On May 13, 1996, Defendant filed a motion to dismiss and for summary judgment, which among other things, asserted that the Court should refrain from exercising jurisdiction in accordance with the doctrine of abstention and in the interests of comity. In support of this position, Defendant stated that Plaintiff has a right to intervene in a state court proceeding before Judge Nelson to assert his rights to the vehicle.

In considering the motion, this Court noted that Judge Nelson has the authority to "reconsider" his decision with respect to the November 15, 1995 order, as it relates to the vehicle at issue, and if after hearing Plaintiff's arguments, Judge Nelson believes that the order was improvidently entered, he can set aside such order as it relates to the vehicle. Accordingly, on April 4, 1997, this Court issued an Opinion and Order dismissing Defendant's motion without prejudice, and stayed further proceedings in this case pending the outcome of the proceedings in the state court. *See Brindley v. McCullen,* 61 F.3d 507 (6th Cir.1995) (holding that the appropriate procedure when abstaining is to stay the proceedings rather than to dismiss the case without prejudice).

In spite of the suggested course of action in this Court's Opinion, rather than intervene in the case under which the vehicle was seized, Plaintiff filed a separate action in Jackson County Circuit Court asserting the same claims he asserts in this case. John McBain, the current Prosecuting Attorney for Jackson County, was also named as a Defendant in the action. The case was assigned to Judge Timothy Pickard. Defendant filed a motion for summary disposition, contending that plaintiff's complaint failed to state a claim on which relief could be granted, that plaintiff's claims were barred by the doctrine of absolute prosecutorial immunity, that plaintiff's claims were barred by the doctrine of qualified immunity, that there was no genuine issue of material fact and defendant was entitled to judgment as a matter of law, and that the court should

---

**1.** At the time, Plaintiff was Denman's boyfriend. Plaintiff and Denman have since married.

refrain from ruling in favor of plaintiff in accordance with MCR 2.613(B), which provides that a judgment or order may be set aside or vacated only by the judge who entered the order. Defendant's motion was held in abeyance, to once again give Plaintiff the opportunity to intervene in the criminal action.

In December of 1998, Plaintiff finally intervened in the criminal action by filing a "Petition for Leave to Request Correction of Order."[2] The state court denied relief to Plaintiff. (*See* 12/18/98 Order Denying All Relief to Petitioner and Leaving the Order of November 15, 1995 to Stand Unchanged).

Following Plaintiff's unsuccessful attempt to challenge the seizure order, defendants Hurst and McBain filed a renewed motion for summary judgment before Judge Pickard. Following a hearing, the court stated it was "going to grant Defendant's motion" because their actions "were in an official capacity as prosecutors and they are immune from liability." The trial court then entered an order granting Defendants' motion "for all the reasons set forth in Defendants' Motion for Summary Disposition and Brief in Support." (*See* 2/8/99 Opinion & Order Granting Defs.' Renewed Mot. for Summ. Disposition).

Plaintiff appealed, asserting that the trial court erred in granting summary disposition on the basis of absolute prosecutorial immunity. Plaintiff asserted that Defendants Hurst and McBain are not entitled to such immunity because the actions which violated his constitutional rights occurred after the completion of all criminal proceedings, and therefore were not activities associated with initiating a prosecution and presenting the state's case. The Michigan Court of Appeals disagreed, and

affirmed the trial court's grant of summary disposition. *See Younce v. Hurst & McBain*, No. 217790, 2000 WL 33403030 (Mich. App. November 3, 2000).

On June 27, 2001, Defendant filed this renewed motion to dismiss and for summary judgment.

*Standard of Review*

A motion to dismiss may only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle to him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment when "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." There is no genuine issue of material fact for trial unless, by viewing the evidence in favor of the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Boddy v. Dean*, 821 F.2d 346, 349 (6th Cir.1987).

**Discussion**

Although Plaintiff's first amended complaint alleges that on or about December 10, 1995, "the *defendant* seized a 1994 Pontiac Bonneville, titled in the name of the plaintiff," it is undisputed that the Michigan State Police, not Defendant, actually seized the vehicle. (First Am. Compl. ¶ 5)(emphasis added). As Plaintiff acknowledges, the conduct that Plaintiff challenges in this § 1983 action is Defen-

**2.** Judge Perlos had been assigned to replace Judge Nelson.

dant Hurst's actions in obtaining the order from Judge Nelson.

Defendant asserts that Plaintiff's complaint must be dismissed because, among other reasons, he is entitled to absolute prosecutorial immunity.

■ Absolute prosecutorial immunity is a common law principle that shields a prosecutor from § 1983 liability. *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir.2000)(citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "The Supreme Court has endorsed a 'functional' approach for determining whether an official is entitled to absolute prosecutorial immunity, explaining that a court should look to 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* at 946–47 (citing *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988)). The functional approach focuses on whether the prosecutor's challenged activities are "intimately associated with the judicial phase off the criminal process." *Id.* at 947. Those acts that occur in the course of the prosecutor's role as an advocate for the state are protected by absolute immunity. *Id.* On the other hand, prosecutors are not absolutely immune when they perform "administrative, investigative, or other functions," such as when they give legal advice to the police or hold a press conference. *Holloway v. Brush*, 220 F.3d 767, 774–75 (6th Cir.2000). "The analytical key to prosecutorial immunity, therefore, is advocacy—whether the actions in question are those of an advocate." *Id.* at 775. (citations omitted).

■ At the November 15, 1995 hearing, in the criminal case against Denman, Defendant advised Judge Nelson that certain assets existed which he believed should be made "available for disbursements to the victims with the notation that that would be credited against her restitution order,"

and offered to prepare such an order. Judge Nelson told Defendant to provide such an order and he would then sign it. Accordingly, Defendant later presented the order to Judge Nelson, and Judge Nelson signed the order.

Defendant was not performing an "administrative or investigative" function when he sought the order at issue in this case. Rather, the Court is satisfied that Defendant was acting as an advocate for the people of the State of Michigan, and for Denman's victims in particular, when he requested the order during the November 15, 1995 hearing, and when he subsequently submitted the order for Judge Nelson's signature.

■ Plaintiff asserts that absolute prosecutorial immunity is "basically limited to the activities of 'initiating a prosecution and in presenting the states [sic] case,'" and that in this case Defendant sought the order in question "after the completion of all criminal proceedings." (Pl.'s Resp. at 13–14). Although many cases tend to speak of absolute prosecutorial immunity as applying to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, "such language does not serve to delineate the *endpoint* of immunity. Rather, it simply underscores the fact that absolute immunity does not apply to the investigatory duties of a prosecutor, that is it serves to establish the *starting point* of such immunity." *Parkinson v. Cozzolino*, 238 F.3d 145, 151 (2nd Cir.2001). Accordingly, contrary to Plaintiff's position, courts have applied absolute prosecutorial immunity to shield prosecutors from liability for post-conviction conduct. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir.1994)(noting that post-conviction actions are entitled to absolute prosecutorial immunity when prosecutor is "still functioning as an advocate

for the State"); *Summers v. Sjogren,* 667 F.Supp. 1432, 1434 (D.Utah 1987) (finding that prosecutor "does not lose immunity merely because she was acting in a post-conviction setting"). As Defendant was still acting as an advocate for the State in requesting and submitting the order at issue to Judge Nelson, Defendant is entitled to absolute prosecutorial immunity. Accordingly, Plaintiff's complaint against Defendant must be dismissed.

### Conclusion

For the reasons set forth above, Defendant's renewed motion to dismiss or for summary judgment shall be granted, and Plaintiff's complaint shall be dismissed with prejudice. A Judgment consistent with this Opinion shall issue forthwith.