Maria ALMONTE, Mary Cammarato, Barbara Davis, and Peter Snow, Plaintiffs–Appellees,

Richard Schuh and Gregory Scott, Plaintiffs,

v.

The CITY OF LONG BEACH, Mona Goodman, James P. Hennessy, Thomas Sofield, Jr., individually and as members of the Council of the City of Long Beach and Glen Spiritis, as Manager of the City of Long Beach, Defendants–Appellants,

Denis G. Kelly and Leonard Remo, Defendants.

Docket No. 06–2010–cv.

United States Court of Appeals, Second Circuit.

Argued: Jan. 18, 2007.

Decided: Feb. 14, 2007.

and *In re Universal Service Fund Tel. Billing Practice Litig.,* 428 F.3d 940 (10th Cir.2005), we decline to follow them.

Louis D. Stober, Jr., Law Offices of
Louis D. Stober, Jr., LLC (Heather H.

Patton, on the brief), Garden City, NY, for Plaintiffs–Appellees.

Ronald J. Rosenberg, Rosenberg Calica & Birney LLP (Edward M. Ross, John S. Ciulla, of counsel), Garden City, NY, for Defendants–Appellants.

Before LEVAL and STRAUB, Circuit Judges, and UNDERHILL, District Judge.*

STRAUB, Circuit Judge:

This interlocutory appeal arises from a wrongful termination action brought by several former employees of the City of Long Beach ("City") against the City, the City Manager, and the Republican members of the City Council ("Council members"), both in their individual capacities and in their official capacities as Council members. Plaintiffs-appellees (hereinafter, "Plaintiffs") claim that the defendants-appellants (hereinafter, "Defendants") terminated their employment because of their affiliation with the Democratic Party and their exercise of free speech, in violation of their First Amendment rights, their due process rights, and 42 U.S.C. § 1983. Plaintiffs also assert that Defendants conspired to terminate them on the basis of their political affiliations and beliefs, and failed to prevent the terminations from occurring, in violation of 42 U.S.C. §§ 1985 and 1986.[1]

Defendants moved to dismiss the complaint on various grounds, including legislative and qualified immunity. On March 28, 2006, the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge)* granted the motion in part and denied it in part. In particular, the District Court held that

while the Council members were absolutely immune for voting for the budgetary resolutions that abolished Plaintiffs' positions, they were not so protected for meeting with non-legislators to discuss the terminations because those meetings were allegedly conducted in secret. The District Court also denied the Council members' motion to dismiss on qualified immunity grounds.

We hold that legislative immunity applies not only to the Council members' vote on the budgetary resolutions that terminated the budget lines for Plaintiffs' positions, but also to any discussions and agreements the Council members may have had regarding the new budget prior to the vote, regardless of whether those discussions and agreements took place in secret. Thus, to the extent that the §§ 1983, 1985, and 1986 claims against the Council members relate to the legislative termination of the budget lines for Plaintiffs' positions, the District Court's denial of legislative immunity is reversed.

While the grant of legislative immunity covers all aspects of the legislative process, it would not protect the Council members from a charge, if asserted here, that they administratively fired, or conspired to administratively fire, any Plaintiff prior to the date on which his or her position was effectively abolished pursuant to the legislative resolutions. We remand the case for the District Court to determine, based on the operative complaint or upon further amendment, whether any of the Plaintiffs have alleged or could allege such a claim. Finally, we dismiss for lack of interlocutory appellate jurisdiction the Council members' appeal of the denial of qualified immunity for the firing of Mary Cammara-

* The Honorable Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

1. Plaintiffs also pled several supplemental claims under state law. Those claims are not involved in this appeal, and are not addressed in this opinion.

to based on the contention that she was a policymaker, as well as the City's appeal of the denial of its motion to dismiss.

## BACKGROUND

### A. Factual Allegations

■ As this case comes to us after the denial of a motion to dismiss, we must accept the facts as they are alleged in the complaint. *See Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir.1995). According to the amended complaint, Plaintiffs were all longtime employees for the City until they were terminated in 2004. Maria Almonte was terminated from her position as Bus Dispatcher effective June 30, 2004. Mary Cammarato was suspended from her post as Tax Assessor on July 24, 2004, and then "ostensibly laid-off" the following day. Barbara Davis served as an Administrative Aide until her employment with the City was terminated on June 16, 2004. Peter Snow was terminated from his position as the Superintendent of Municipal Buildings effective July 2, 2004. At the time of their terminations, Plaintiffs were all active and well-known members of the Democratic Party, with close affiliations with long-standing leaders of the Long Beach Democratic Party. Cammarato and Snow were especially active in campaigning for Democratic candidates leading up to the 2003 elections.

Mona Goodman, James P. Hennessey, and Thomas Sofield, Jr. were elected to the City Council in 2003; they belonged to the Republican Party and, at the time of Plaintiffs' terminations, constituted the majority of the five-member City Council. Glen Spiritis, also a member of the Republican Party, was appointed as City Manager.

Sometime in 2004, Goodman, Hennessey, Sofield, and Spiritis participated in a series of private meetings at the home of Charles Theofan, the Corporation Counsel for the City. Also in attendance was James Moriarity, the Executive Leader of the Long Beach Republican Party. The two Democratic members of the City Council were not invited to the meetings, or notified of their purpose or occurrence. According to the amended complaint, one purpose of these secret, unofficial meetings was to discuss firing Plaintiffs on account of their political affiliations with the Democratic Party and their allegiance to the leaders of the Long Beach Democratic Party. Plaintiffs claim that during the course of those meetings, the participants reached a decision or agreement to fire them on that basis.

On May 25, 2004, the City Council convened, and passed by majority vote, Resolution No. 121/04, which adopted and confirmed the Budget and Personnel Schedule for the 2004–2005 fiscal year.[2] The new budget terminated the funding for the positions of Bus Dispatcher, Tax Assessor, and Administrative Aide, effective July 1, 2004. On August 3, 2004, the Council passed a supplemental budgetary resolution, Resolution No. 181/04, which amended the personnel roster to delete the position of Superintendent of Municipal Buildings, effective immediately.

### B. The District Court's March 28, 2006 Decision

Defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, raising a number of different argu-

---

**2.** The facts relating to the budgetary resolutions are not contained in the complaint. However, because these facts are matters of public record and are not in dispute, the District Court properly considered them in ruling on the motion to dismiss. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998).

ments. Of relevance to this appeal, the Council members asserted that absolute legislative immunity barred all claims against them because their enactment of the budgetary resolutions, which de-funded Plaintiffs' positions, constituted legitimate legislative activity. In the alternative, the Council members argued that they were entitled to qualified immunity against Mary Cammarato's claims, because as the City Tax Assessor, she was a "policymaker" within the meaning of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The City also invoked the "policymaker exception" in support of dismissal of Cammarato's municipal liability claims. In addition, the City contended that none of the Plaintiffs had adequately alleged a constitutional violation caused by a municipal policy, custom, or practice.

The District Court granted the Council members' motion in part and denied it in part. It held that legislative immunity insulated the Council members from liability for voting for and passing the budgetary resolutions. It found that legislative immunity did not extend, however, to the Council members' purported participation in secret meetings with non-legislators. Relying on *Berlickij v. Town of Castleton,* 248 F.Supp.2d 335, 343 (D.Vt.2003), the District Court reasoned that the secrecy of the meetings took them outside the sphere of legitimate legislative activity and, as a result, outside the protective scope of legislative immunity.

The District Court also denied the Council members' motion to dismiss Mary Cammarato's claims on qualified immunity grounds. While it noted that the argument sounded "plausible," the District Court concluded that further factual development was necessary before it could determine whether Cammarato was or was not a "policymaker" within the meaning of *Elrod v. Burns.* The District Court de-

nied the City's motion to dismiss the §§ 1983, 1985, and 1986 claims asserted against it.

The Council members now seek interlocutory review of the District Court's denial of legislative and qualified immunity. The City requests that we exercise pendent jurisdiction over the District Court's denial of its motion to dismiss.

## DISCUSSION

### A. Interlocutory Appellate Jurisdiction

■ Generally, this Court has jurisdiction over appeals only from "final decisions of the district courts." 28 U.S.C. § 1291. The "denial of a motion to dismiss is ordinarily considered non-final, and therefore not immediately appealable." *Hill,* 45 F.3d at 659. Under the collateral doctrine, however, "[a]n order denying a motion to dismiss a complaint against a[n] ... official when the dismissal motion is based on the official's assertion of absolute or qualified immunity" is immediately reviewable, "to the extent that the denial turns on issues of law." *Id.* at 659–60; *see also Locurto v. Safir,* 264 F.3d 154, 164 (2d Cir.2001) (holding that an interlocutory appeal is permitted from the denial of immunity at the motion to dismiss phase, even when it is without prejudice, because such a denial is "conclusive with regard to a defendant's right to avoid *pre-trial* discovery, so long as the validity of the denial of the ... immunity defense can be decided as a matter of law in light of the record on appeal"). On the other hand, "if a factual determination is a necessary predicate to the resolution of whether ... immunity is a bar, review is postponed." *Parkinson v. Cozzolino,* 238 F.3d 145, 149 (2d Cir.2001) (internal quotation marks omitted).

■ Plaintiffs contend that the Council members raised the defenses of legislative

and qualified immunity only against the official-capacity claims, and that consequently, this Court lacks appellate jurisdiction to review the availability of immunity with respect to the individual-capacity claims. Plaintiffs' argument is premised on a fundamental misunderstanding of the defense of immunity. Immunity, either absolute or qualified, is a *personal* defense that is available only when officials are sued in their individual capacities; "[t]he immunities [officials] enjoy when sued personally do not extend to instances where they are sued in their official capacities." *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir.1999); *see Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73–74 (2d Cir.1992) (explaining that an official-capacity claim is in substance a claim against the municipality, which cannot assert immunity, either absolute or qualified, as a defense to liability under 42 U.S.C. § 1983). The Council members asserted both legislative and qualified immunity in their motion to dismiss, and the District Court addressed these issues at length in its decision.[3] Accordingly, we have jurisdiction to review whether the Council members are immune from liability in their individual capacities, to the extent that the inquiry turns on questions of law.

■ Because no final order has been entered in this case, we lack appellate jurisdiction to decide issues that are not independently entitled to interlocutory review. *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756–57 (2d Cir.1998). We have discretion to exert pendent jurisdiction over such an issue, but this discretion may be exercised only "(a) where [the] issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal, or

(b) where review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of a jurisdictionally sufficient one." *Id.* at 757–58 (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)).

## B. Legislative Immunity

■ Under the Supreme Court's functional test of absolute legislative immunity, whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir.2003) (citing *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), and *Forrester v. White*, 484 U.S. 219, 224, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). More specifically, legislative immunity shields an official from liability if the act in question was undertaken " 'in the sphere of legitimate legislative activity.' " *Id.* (quoting *Bogan*, 523 U.S. at 54, 118 S.Ct. 966). Local legislators, like their counterparts on the state and regional levels, are entitled to absolute immunity for their legislative activities. *Bogan*, 523 U.S. at 49, 118 S.Ct. 966; *Harhay*, 323 F.3d at 210.

■ The Council members argue that the District Court erroneously relied on the *Berlickij* case in analyzing their defense of legislative immunity. We agree. In *Berlickij*, the plaintiff complained that the members of the town selectboard and planning commission had conducted their executive sessions in secret and had thereby "denied her and others the opportunity to speak and to participate in town meetings, and denied her access to a public forum." *Berlickij*, 248 F.Supp.2d at 343.

---

**3.** The District Court dismissed the official-capacity claims against the Council members as duplicative of the *Monell* claims. That portion of the District Court's decision is not before us at this time.

In other words, in *Berlickij* it was the very secrecy of the meetings that the plaintiff claimed had violated her rights. Here, by contrast, there is no tenable contention that Plaintiffs had a legal right to attend the meetings at Theofan's home, and Plaintiffs' claims are not premised on a theory of wrongful exclusion. Rather, Plaintiffs assert that the Council members violated their rights by terminating, and conspiring to terminate, their employment on the basis of their political beliefs and affiliations with the opposing party. Thus, whether legislative immunity requires dismissal of the claims against the Council members depends on whether these particular acts—the alleged firing of, and conspiracy to fire, Plaintiffs—were undertaken "in the sphere of legitimate legislative activity." *Harhay*, 323 F.3d at 210 (internal quotation marks omitted).

The District Court granted legislative immunity for the Council members' vote for the budgetary resolutions that terminated the budget lines for Plaintiffs' positions, but denied it with respect to their alleged participation in the secret meetings. We hold that legislative immunity is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process, including the discussions held and alliances struck regarding a legislative matter in anticipation of a formal vote. As the Supreme Court has explained, the purpose of absolute legislative immunity is to protect legislators from "deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Meeting with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation, and participating in party caucuses to form a united position on matters of legislative policy, assist legislators in the discharge of their legislative duty. These activities are also a routine and legitimate part of the modern-day legislative process. *See Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir.1980) (observing that "[m]eeting with 'interest' groups, professional or amateur, regardless of their motivation, is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider"). The fact that such meetings are politically motivated, or conducted behind closed doors, does not "take away from the legislative character of the process." *Id.; see Tenney*, 341 U.S. at 377, 71 S.Ct. 783 (holding that "[t]he claim of an unworthy purpose does not destroy the privilege").

Applying this principle to the instant case, we conclude that legislative immunity cloaks not only the vote on the budgetary resolutions, but also any discussions the Council members may have held, and any agreements they may have made, regarding the new budget in the months preceding the actual vote. That the discussions and agreements occurred in secret does not strip these activities of their legislative function. Therefore, to the extent that Plaintiffs' §§ 1983, 1985, and 1986 claims relate to the legislative termination of the budget lines for their positions, the denial of legislative immunity was incorrect as a matter of law and must therefore be reversed.

 This conclusion does not automatically dispose of the entirety of Plaintiffs' claims against the Council members, however. As we held in *Jessen v. Town of Eastchester*, 114 F.3d 7 (2d Cir.1997) (per curiam), absolute legislative immunity does not protect legislators against a claim of an administrative firing, even if the employee's position was later abolished pur-

suant to a legislative act. *See id.* at 8 ("Even assuming, without deciding, that the elimination of Jessen's position was a legislative act, his earlier termination from a position which then, at least briefly, remained open was an administrative act that legislative immunity does not protect."). A personnel decision is administrative in nature if it is directed at a particular employee or employees, and is not part of a broader legislative policy. *Cf. Bogan*, 523 U.S. at 55–56, 118 S.Ct. 966 ("The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, *unlike the hiring or firing of a particular employee,* may have prospective implications that reach well beyond the particular occupant of the office.... Thus, petitioners' activities were undoubtedly legislative." (emphasis added)). Administrative "personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to [legislative] immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors." *Harhay*, 323 F.3d at 210–11. Thus in *Harhay*, we concluded that the town board members were not absolutely immune for their actions with respect to the plaintiff's employment, including their vote to table the matter of another employee's resignation, because those actions "were part of a process by which an em-

ployment situation regarding a single individual was resolved" and not "the kind of broad, prospective policymaking that is characteristic of legislative action." *Id.* at 211.

The District Court did not have the opportunity to consider this distinction in ruling on the motion to dismiss. Accordingly, we remand the case for the District Court to determine in the first instance whether any of the Plaintiffs have alleged, or could allege, that the Council members administratively fired them prior to the effective date of the budgetary changes that eliminated their positions. If so, then legislative immunity would not relieve the Council members from defending against those Plaintiffs' § 1983 claims. Furthermore, to the extent that the discussions and agreements that purportedly took place at the secret meetings related to the administrative firing of any Plaintiffs, the Council members would not be legislatively immune from those Plaintiffs' §§ 1985 and 1986 claims.[4]

### C. Qualified Immunity Based on the "Policymaker Exception"

■ The doctrine of qualified immunity shields public officials from personal liability for official actions, "unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known." *Harhay*, 323 F.3d at 211; *see Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d

---

4. We further note that qualified immunity would not protect the Council members for administratively firing, or conspiring to administratively fire, any Plaintiffs on the basis of their political speech or affiliations, unless the employee held a policymaking position for which political affiliation was a valid employment criterion, *see infra* Section C. *See Elrod*, 427 U.S. at 372–73, 96 S.Ct. 2673 (holding that "the practice of patronage dismissals is unconstitutional under the First and Four-

teenth Amendments" unless the employee is a policymaker); *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 107 (2d Cir.2006) (stating that the proposition that "governmental entities may not inflict an adverse employment decision upon an employee in retaliation for the employee's exercise of his First Amendment rights" was clearly established by 2003, and that "no reasonable officer could hold a contrary belief").

396 (1982). Stated differently, an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, *or* (3) if the official's actions were not objectively unreasonable in light of clearly established law. *See Harhay*, 323 F.3d at 211–12.

■ The Council members contend that they are entitled to qualified immunity against Mary Cammarato's claims because her position as Tax Assessor was a policymaking one, and under *Elrod v. Burns*, the First Amendment permits the discharge of policymakers on the basis of their political affiliations. Alternatively, the Council members contend that they reasonably believed that Cammarato was a policymaker in light of clearly established law.

In *Elrod*, a plurality of the Supreme Court recognized that while "the practice of [political] patronage dismissals clearly infringes First Amendment interests," the "prohibition on encroachment of First Amendment protections is not an absolute," and "[r]estraints are permitted for appropriate reasons." *Elrod*, 427 U.S. at 360, 96 S.Ct. 2673. Justice Brennan, writing for the plurality, determined that "the need for political loyalty of employees" was an appropriate justification for permitting some patronage dismissals, "not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Id.* at 367, 96 S.Ct. 2673. Justice Brennan concluded, however, that this governmental need could be met, and employees' First Amendment interests respected, by restricting patronage dismissals to policymaking positions. *See id.* Justice Bren-

nan noted that no clear line could be drawn between policymaking and nonpolicymaking positions, but instructed that "[i]n determining whether an employee occupies a policymaking position, consideration . . . be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.* at 368, 96 S.Ct. 2673.

■ In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), a majority of the Supreme Court confirmed that "party affiliation may be an acceptable requirement for some types of government employment." *Id.* at 517, 100 S.Ct. 1287. The Court in *Branti* "refined the 'policymaking' exception to the prohibition against patronage dismissals," stating:

> [T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Hawkins v. Steingut*, 829 F.2d 317, 320 (2d Cir.1987) (quoting *Branti*, 445 U.S. at 518, 100 S.Ct. 1287) (alteration in original).

■ Because "the *Branti* guidelines do not lend themselves to easy or automatic application," *id.*, this Circuit has identified some relevant factors to be considered in deciding whether an employee may constitutionally be discharged on the basis of his or her political affiliation. "These factors include whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political

leaders." *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir.1994). This list is not intended to be exhaustive, nor is any one factor dispositive; "[t]he proper approach is to assess all the factors in order to determine whether 'there is a rational connection between shared ideology and job performance.'" *Id.* (quoting *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir.1988)).

■ Ultimately, whether an employee's position falls within the *Elrod–Branti* policymaker exception is a question of law for the court. *Gordon v. County of Rockland*, 110 F.3d 886, 888–89 (2d Cir.1997). However, as the above list of indicators suggests, the legal determination cannot be made without some preliminary factual inquiry. *See Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir.1993) ("There must be an independent factual analysis of several factors to determine whether the position falls within the political dismissal exception contemplated in *Branti.*"). Thus, the issue may be resolved at the pleading stage only where the complaint, or the relevant state or municipal provisions, provide sufficient facts about the plaintiff's job responsibilities for the *Vezzetti* factors to be applied. *See, e.g., Danahy v. Buscaglia*, 134 F.3d 1185, 1191 (2d Cir.1998); *McEvoy v. Spencer*, 124 F.3d 92, 104 (2d Cir.1997). While the availability of qualified immunity may be determined on a less than complete record, qualified immunity may only be granted on a motion to dismiss if "the available record adequately supports the defendants' claim that it was objectively reasonable for them to believe that" party affiliation was an appropriate requirement for the effective performance of the plaintiff's official duties. *McEvoy*, 124 F.3d at 105; *cf. Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 141 (2d Cir.1999) (reversing the district court's grant of qualified immunity on a motion to dismiss, where the complaint did not establish that the employee was a policymaker, and no statute or ordinance defined the employee's position as one of a policymaker).

■ Here, the District Court concluded that further factual development was necessary to assess whether there was a rational connection between Cammarato's position as the Tax Assessor and her political affiliation. Because the District Court's denial of qualified immunity did not turn on an issue of law, and because "a factual determination is a necessary predicate to the resolution of whether ... immunity is a bar, review [must be] postponed." *Parkinson*, 238 F.3d at 149 (internal quotation marks omitted). *Cf. McEvoy*, 124 F.3d at 96 ("An order denying a motion to dismiss on the ground of qualified immunity is immediately appealable where the district court has rejected that defense as a matter of law." (internal quotation marks omitted)). Accordingly, this portion of the Council members' appeal is dismissed for lack of interlocutory appellate jurisdiction.

### D. Municipal Liability Claims

The City appeals the District Court's denial of its motion to dismiss. Because the issues raised in the City's appeal are not "inextricably intertwined" with the question of either legislative or qualified immunity, and review of those issues is not necessary for meaningful review of the claim of immunity, we do not have pendent jurisdiction over them. *See Demoret v. Zegarelli*, 451 F.3d 140, 152 (2d Cir.2006). We therefore dismiss the City's appeal for lack of interlocutory appellate jurisdiction.

### CONCLUSION

For the foregoing reasons, Defendants' appeal is DISMISSED IN PART, the decision of the District Court is REVERSED IN PART, and

the case is REMANDED for further proceedings consistent with this order.

